UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MISCHELLE L. SZEFLER,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

16-CV-774
DECISION AND ORDER

---

On September 26, 2016, the plaintiff, Mischelle L. Szefler, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On February 21, 2017, Szefler moved for judgment on the pleadings, Docket Item 9, and on May 9, 2017, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13.

For the reasons stated below, this Court grants Szefler's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On May 15, 2013, the Social Security Administration ("SSA") received Szefler's application for Disability Insurance Benefits. Tr. 290-300. Szefler claimed that she had been disabled since October 24, 2012, due to post traumatic stress disorder, anxiety, panic disorder, asthma, hernias, obsessive-compulsive disorder, chronic pain,

osteoarthritis, rheumatoid arthritis, tachycardia, mitral valve prolapse, "positive [human papillomavirus] with squamous cells," and fibromyalgia. Tr. 293, 297, 299.

On September 5, 2013, Szefler received notice that her application was denied because she was not disabled under the Act. Tr. 227. She requested a hearing before an administrative law judge ("ALJ"), Tr. 235, which was held before ALJ Robert T. Harvey in Buffalo, New York, on May 14, 2015, Tr. 172. ALJ Harvey then issued a decision on June 23, 2015, confirming the finding that Szefler was not disabled. Tr. 146-163. Szefler appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 1. On September 26, 2016, Szefler filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Szefler's objection. Szefler was examined by several different providers, but only six—John Fabian, M.D., an internist; John Schwab, D.O., a family medicine physician; Donald Copley, M.D., a cardiologist; Donna Miller, D.O., a family medicine physician; Madonna Reddington, R.N., M.S., F.N.P., a family nurse practitioner; and Linda Cole, R.P.A., a physician assistant—are of significance to this Court's review of her disability determination.

### A. John Fabian, M.D., Internist

Szefler had an extended treatment relationship with Dr. Fabian, an internist, since at least 2006. *See* Tr. 402-429, 458-467. Dr. Fabian's treatment notes regularly concluded that Szefler suffered from both asthma and fibromyalgia. *See, e.g.*, Tr. 408, 409, 414, 466.

2

### B. John Schwab, D.O., Family Medicine Physician

On January 31, 2012, Szefler was examined by Dr. Schwab, a family medicine physician, for a consultative examination. Tr. 468-471. Szefler told Dr. Schwab that among her other complaints, she had had fibromyalgia for the last 20 years, which caused constant sharp pain with a maximum intensity of seven out of ten. Tr. 468. Szefler also told Dr. Schwab that she had suffered from asthma since 2000, and that "anything can trigger it." *Id.* In fact, she said that she had an asthma attack the day of the evaluation, as well as fifteen attacks in the last thirty days; nevertheless, she did not go to the emergency room for treatment in connection with any of those attacks. *Id.*

After his examination, Dr. Schwab diagnosed Szefler with seven medical conditions, including fibromyalgia and asthma. Tr. 471. He stated that "[s]he should avoid any dust, irritants, tobacco exposure, or any other irritant which could trigger an asthma attack. Otherwise, no restrictions based upon the findings of today's examination." *Id.*

### C. Donald Copley, M.D., Cardiologist

On May 23, 2013, Szefler was examined by Dr. Copley, a cardiologist. Tr. 619. She was referred to Dr. Copley for evaluation of chest discomfort and tachycardia, but his report noted that one of her impairments was asthma. Tr. 620.

### D. Donna Miller, D.O., Family Practice Physician

The Social Security Administration referred Szefler to Dr. Miller, a family practice physician, who examined Szefler on August 15, 2013. Tr. 802-806. Among other complaints, Szefler told Dr. Miller that she suffered from asthma. Tr. 802. According to Dr. Miller's report, although Szefler denied "any recent hospitalizations or ER visits" for

asthma and "[h]er inhaler helps alleviate it," she does have "a history of asthma since 2006" and "[s]trong odors and sinus congestion will trigger [it]."

After her examination, Dr. Miller diagnosed Szefler with five medical conditions, including asthma. Tr. 805. She stated that Szefler "should avoid dust, irritants, and tobacco exposure." *Id.*

### E. Madonna M. Reddingon, Family Nurse Practitioner

On November 16, 2012, Family Nurse Practitioner Reddington, ("FNP Reddington") examined Szefler. Tr. 645. Szefler visited FNP Reddington for an "[a]sthma follow-up." *Id.* FNP Reddington reported Szefler's symptoms as "wheezing, chest tightness, shortness of breath and productive cough, while symptoms do not include chest pain." *Id.* She also reported that "[o]nset followed a change in weather" and that "symptoms occur intermittently." *Id.* FNP Reddington noted both that Szefler's asthma symptoms "are exacerbated by cold temperature, activity, inhaler use [sic] and lying down" but also were "relieved by inhaler use." *Id.* Szefler told FNP Reddington that she used her "rescue bronchodilator [two] times per day." *Id.* FNP Reddington diagnosed Szefler with asthma but noted that she "[s]tates improved breathing; using ProAir only" once per week. Tr. 647.

On April 12, 2013, FNP Reddington again examined Szefler, following up on her asthma condition. Tr. 633. FNP Reddington described Szefler's asthma symptoms as being similar to those reported in November 2012. *Id.* FNP Reddington's asthma assessment noted that the test results indicated that Szefler's asthma treating plan was working. Tr. 635.

4

### F. Linda E. Cole, R.P.A., Physician Assistant

On November 28, 2013, Szefler was examined by Registered Physician Assistant Cole ("RPA Cole"). At that visit, Szefler reported that she had chronic asthma for which she was taking medication but that she had "[n]o asthmatic flares recently." Tr. 968. Szefler saw RPA Cole again on March 5, 2014, for an asthma check-up. Tr. 964, 967. Szefler reported that she "has been doing fairly well with no major flareups but occasional shortness of breath with cold air." Tr. 964. She also reported to RPA Cole that she rarely "use[s] her rescue inhaler" and that she "takes all the other medications." *Id.*

## III. THE ALJ'S DECISION

In denying Szefler's application, the ALJ evaluated Szefler's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations,

5

the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ determined that Szefler had "not engaged in substantial gainful activity since October 24, 2012, the alleged onset date." Tr. 151. At step two, the ALJ found that Szefler had the following severe impairments: "discogenic cervical and lumbar spine, cervical and lumbar radiculopathy, arthritis, depression, anxiety, and post traumatic stress disorder." *Id.* He concluded that Szefler's asthma, tachycardia, and

6

mitral valve prolapse were not severe impairments. Tr. 151-52. At step three, the ALJ concluded that none of Szefler's impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in SSA regulations. Tr. 152-54.

In assessing Szefler's RFC, the ALJ determined that Szefler could perform light work, as defined in 20 C.F.R. § 404.1567(b),[1] but could not work at unprotected heights or around heavy, moving, or dangerous machinery. Tr. 154. The ALJ found that Szefler has occasional limitations in bending, climbing, stooping, squatting, kneeling, and balancing. *Id.* He also determined that she could not climb ropes, ladders, or scaffolds. *Id.* "She has occasional limits in the ability to handle, or perform gross manipulation, finger, or perform fine manipulation, feel, push, and pull with the upper extremities." *Id.* He found that she has occasional limitations in her ability to maintain attention and concentration for extended periods of time, as well as in her ability to interact independently with the general public. *Id.* Finally, he found that she has occasional limitations in her ability to respond appropriately to changes in a work setting and to deal with stress. *Id.*

The ALJ based his RFC findings on the opinions of Szefler's physicians and other available medical evidence. Tr. 154-160. He concluded that Szefler's subjective testimony about her impairments was "credible, but not to the extent alleged." Tr. 161.

---

[1] "Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in the category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

7

In light of that RFC, the ALJ determined that Szefler is unable to perform any past relevant work. Tr. 161. At step five, however, the ALJ concluded that Szefler is able to perform "jobs that exist in significant numbers in the national economy." Tr. 162. Specifically, the ALJ determined that Szefler can work as a "[f]olding machine operator" or as a "[h]ousekeeping cleaner." *Id.*

Szefler raises several objections to the ALJ's determination that she is not disabled. She argues that the ALJ erred at step two by failing to conclude that her asthma condition was severe. Docket Item 9-1 at 20-23. She argues that the ALJ should have considered the impact of her fibromyalgia, in combination with her other impairments, on her ability to perform substantial gainful activity. *Id.* Szefler also objects to the ALJ's formulation of her RFC, claiming that his determination is not supported by substantial evidence and that he failed to properly evaluate her credibility. *Id.* at 23-26. Finally, Szefler argues that the ALJ erred at step five in concluding that she could perform other work that exists in significant numbers in the national economy. *Id.* at 26-28.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [SSA] applied the correct legal principles in making the determination." *Id.* This includes ensuring that the court is "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Then, the court "decide[s] whether the

8

determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Id.* at 986. "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I. SZEFLER'S OBJECTIONS

Szefler objects to the ALJ's evaluation of severity of her impairments. Docket Item 9-1 at 20-23. She specifically argues that the ALJ erred in failing to properly evaluate whether her asthma, together with related conditions and fibromyalgia, were severe impairments. *Id.* She asserts that "[t]here is no evidence of record to support his conclusion" that "there was no persuasive proof that [her asthma] impairment was severe." *Id.* at 21. Furthermore, Szefler claims that the ALJ's failure to discuss her fibromyalgia at all was a legal error requiring remand for consideration of whether fibromyalgia is a severe condition. *Id.* at 22.

Szefler also contends that the ALJ failed to properly evaluate her RFC. *Id.* at 23-28. More specifically, she argues that the ALJ's findings that she can perform a limited range of light work is not supported by substantial evidence because it lacks support in the medical evidence and testimony. *Id.* at 23-35. Furthermore, she claims that the

9

ALJ failed to properly evaluate her credibility and incorrectly concluded that she could perform other work that exists in significant numbers in the national economy. *Id.* at 25-28.

## II.     ANALYSIS

### A.     Asthma

Szefler claims that the ALJ's decision at step two that her asthma condition is not severe is not supported by substantial evidence on the record. Docket Item 9-1 at 20. The ALJ observed that a number of doctors diagnosed Szefler with asthma, but, in a conclusory fashion, simply stated that "there is no persuasive proof that this impairment can be considered severe." Tr. 151.

Even assuming that the ALJ erred in concluding that Szefler's asthma was not a severe impairment at step two, any error was harmless. *See Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013). The purpose of step two is merely to "weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). In Szefler's case, the ALJ identified other "severe impairments," including her discogenic cervical and lumbar spine, cervical and lumbar radiculopathy, arthritis, depression, anxiety, and post-traumatic stress disorder, Tr. 151, permitting the ALJ to proceed to subsequent steps. And at those subsequent steps, the ALJ specifically considered her asthma as part of his assessment. Tr. 156-158; *see* 20 C.F.R. § 404.1545(a)(3) (when determining RFC, SSA "will consider all of [the claimant's] medically determinable impairments of which [SSA is] aware, including [a claimant's] medically determinable impairments that are not 'severe'"). "Because

[Szefler's asthma was] considered during the subsequent steps, any error [that may have been committed] was harmless." *Reices-Colon*, 523 Fed. App'x at 798; *see also Mahnke v. Comm'r of Soc. Sec. Admin.*, 2018 WL 4442265, at *4 (W.D.N.Y. Sept. 17, 2018) ("the error at step two was harmless because the ALJ considered the effects of all of the claimant's . . . impairments through the remainder of the sequential evaluation process").

### B. Fibromyalgia

Fibromyalgia was among the medical impairments that Szefler claimed limited her ability to work at the time she applied for disability benefits. Tr. 293. Both Dr. Fabian and Dr. Schwab diagnosed Szefler as suffering from fibromyalgia. Tr. 408, 414, 466, 471. Because the ALJ's decision appears not to address fibromyalgia,[2] Szefler contends that the ALJ failed to consider whether this was a severe impairment. Docket Item 9-1 at 22.

Although, the failure to find an impairment to be severe at step two may be harmless error when ALJ later considers the impairment in the evaluation, *see Reices-Colon*, 523 Fed. App'x at 798, here the ALJ did not address or analyze Szefler's fibromyalgia condition as part of his evaluation, including when he determined that Szefler had the RFC to perform light work at step four. *See* Tr. 154-161. And that was an error requiring remand.

---

[2] The ALJ mentions fibromyalgia in passing, Tr. 156, but he does not otherwise address it in his analysis. He does note that on one occasion in September 2014 Szefler "denied limitations of . . . myalgia," Tr. 159, but this Court cannot even determine from the ALJ's decision whether this is about Szefler's fibromyalgia or some other condition.

An ALJ's RFC finding must be "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e). "If [a claimant] ha[s] more than one impairment, [the ALJ] consider[s] all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe.'" in assessing the claimant's RFC. *Id*. § 404.1545(a)(2). Despite the fact that Szefler claimed that fibromyalgia, at least combined with other conditions, prevented her from "engag[ing] in any substantial gainful activity," 42 U.S.C. § 423(d)(1)(A); *see* Tr. 293, and despite the fact that Dr. Schwab and Dr. Fabian both diagnosed Szefler with fibromyalgia, Tr. 410, 471, the ALJ did not address fibromyalgia as part of his RFC determination. The Commissioner provides a number of hypothetical explanations of why the ALJ may have discounted the medical evidence of Szefler's fibromyalgia, *see* Docket Item 13-1 at 13-14, but "without any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence he considered or overlooked." *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016).[3]

---

[3] Although an ALJ "does not err by failing to explicitly mention all of the evidence" on the record, *Pope v. Barnhart*, 57 Fed. App'x 897, 899 (2d Cir. 2003), SSA regulations require the ALJ to "issue a written decision that gives the findings of fact and the reasons for the decision." 20 C.F.R. § 404.953(a). With regard to plaintiff's claim of disability due to fibromyalgia, or to a combination of impairments including fibromyalgia, that did not happen here. The Commissioner contends that the ALJ did not err because he "considered Plaintiff's alleged fibromyalgia symptoms throughout the decision, having found that she had a medically determinable arthritis disorder." Docket Item 13-1 at 14. According to the National Institutes of Health, however, "fibromyalgia is "not a form of arthritis, but like arthritis, it can interfere with a person's ability to perform everyday activities." https://nccih.nih.gov/health/pain/fibromyalgia.htm#hed2. "Fibromyalgia . . . involves widespread pain, tenderness, fatigue, and other symptoms." *Id*. Without any discussion of fibromyalgia in the ALJ's decision, this Court has a "reasonable basis for doubt whether the ALJ applied correct legal principles." *Schaal v.*

12

And even if this Court were to consider the Commissioner's conjecture for discounting the opinions of Dr. Schwab and Dr. Fabian regarding Szefler's fibromyalgia, that conjecture still would be insufficient. The Commissioner asserts that the applicable Social Security Ruling[4] governing fibromyalgia evaluations, SSR 12-2p, 2012 WL 3104869, at *2 ("Evaluation of Fibromyalgia"), requires an acceptable medical source to diagnose the disease based on a physical examination and review of the claimant's medical history consistent with either the 1999 or 2010 American College of Rheumatology ("ACR") criteria. Because neither Dr. Fabian nor Dr. Schwab followed the ACR criteria, the Commissioner contends, their diagnoses do not suffice to establish fibromyalgia as a medically determinable impairment. Docket Item 13-1 at 13-14.

But this argument fails because the ALJ did not recontact Szefler's long-time treating physician—Dr. Fabian—about what the ALJ believed to be inadequacies in Dr. Fabian's medical opinions.[5] The Social Security Act provides that:

> In making any determination [with respect to whether an individual is under a disability] the Commissioner of Social Security shall make every

---

*Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

[4] "Social Security Rulings . . . are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

[5] Under applicable SSA regulations, a "treating source" is a claimant's "own acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing [medical] treatment relationship" with the claimant. 20 C.F.R § 404.1527(a)(2). Szefler identifies Dr. Fabian as a treating physician, Docket Item 9-1 at 22-23, and the Commissioner does not appear to contest that mixed question of law and fact. Because the record includes medical records supporting an ongoing treatment relationship between Dr. Fabian and Szefler at least between August 2006 and June 2012, Tr. 458-67, this Court is satisfied that Dr. Fabian is a treating source under § 404.1527(a)(2).

13

> reasonable effort to obtain from the individual's treating physician ... all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from another source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record"); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sue sponte*"); *Deck v. Comm'r of Soc. Sec. Admin.*, 2018 WL 6111773, at *6 (Nov. 21, 2018) (remanding decision of Commissioner where ALJ failed to recontact treating physician for additional information needed "to appreciate the conclusions of the treating physicians"). So even if the Commissioner's speculation to this Court were correct, the ALJ could not have disposed of Szefler's fibromyalgia based on her physician's failure to evaluate her using the ACR criteria without first asking for her doctor's evaluation under that criteria.

Because the ALJ does not address Szefler's fibromyalgia in his decision, this Court is not "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran*, 569 F.3d at 112 (quoting *Cruz*, 912 F.2d at 11). This Court therefore remands this case so

that the ALJ can expressly consider Szefler's fibromyalgia impairment, develop the record as needed, and reweigh the evidence in light of that analysis.

### C. Substantial Evidence

Szefler also contends that the ALJ's finding that Szefler has the RFC to perform a limited range of light work is not supported by substantial evidence. Docket Item 9-1 at 23-28. She argues that the ALJ's finding lacks support in the medical record and plaintiff's testimony. *Id.* at 23-25. Furthermore, Szefler claims that the ALJ failed to properly evaluate Szefler's credibility and incorrectly concluded that she could perform other work that exists in significant numbers in the national economy. *Id.* at 25-28.

Because these "remaining issues . . . may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Nevertheless, this Court advises the Commissioner that a robust explanation of the record evidence supporting any factual findings is invaluable to judicial review.[6]

---

[6] To the extent the agency remains confident after reweighing the evidence on remand that Szefler has the RFC to perform work as a folding machine operator—and especially a housekeeping cleaner—*see* Tr. 162, it would be prudent for the ALJ to explain in writing how this work is consistent with environment limitations that arise from Szefler's asthma. *See, e.g.,*, Tr. 158, 471, 805. (repeated recommendations that Szefler should avoid exposure to **dust**, irritants, tobacco, and anything else that could trigger an asthma attack).

15

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Szefler's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: December 28, 2018
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE
